UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SIMONE ALDOPH,

    Plaintiff,

v.                                            Case No: 2:17-cv-425-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

Before the Court is Plaintiff Simone Aldoph's Complaint, filed on July 26, 2017. (Doc. 1). Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits and supplemental security income. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum detailing their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I. Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

    **A. Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work or any

other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

## B.     Procedural History

On June 24, 2013 and June 25, 2015 respectively, Plaintiff filed an application for disability insurance benefits and an application for supplemental security income. (Tr. at 129, 130, 262-70). Plaintiff asserted an onset date of August 1, 2009. (*Id.* at 262, 264). Plaintiff's applications were denied initially on October 8, 2013 and on reconsideration on January 21, 2014. (*Id.* at 129, 130, 149, 150). A hearing was held before Administrative Law Judge ("ALJ") William G. Reamon on March 15, 2016. (*Id.* at 50-94). The ALJ issued an unfavorable decision on June 2, 2016. (*Id.* at 19-43). The ALJ found Plaintiff not to be under a disability from August 1, 2009, through the date of the decision. (*Id.* at 43).

On May 22, 2017, the Appeals Council denied Plaintiff's request for review. (*Id.* at 4-8). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on July 26, 2017. This case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 18).

## C.     Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1] An ALJ must determine

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January

2

whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through December 31, 2014. (Tr. at 21). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 1, 2009, the alleged onset date. (*Id.*). At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "Diabetes Mellitus without complications; Moderate Concentric Left Ventricular Hypertrophy and Obesity with a recent BMI of 46.18 (20 [C.F.R. §§] 404.1520(c) and 416.920(c))." (*Id.*). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (*Id*. at 22).

At step four, the ALJ found the following:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. . §§] 404.1567(b) and 416.967(b) except she must avoid concentrated exposure to temperature extremes, vibration, fumes, odors, dusts, gases and poor ventilations and hazards such as dangerous moving machinery and unprotected heights. She cannot climb ladders, ropes or scaffolds. She can occasionally climb ramps and stairs. She can occasionally balance, stoop, kneel, crouch and crawl.

---

1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

(*Id.* at 24-25).

The ALJ determined that Plaintiff was unable to perform any past relevant work. (*Id.* at 41). The ALJ considered Plaintiff's age, education, work experience, and residual functional capacity, and found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 42). The ALJ noted that the vocational expert identified the following representative occupations that Plaintiff was able to perform: (1) parking lot attendant, DOT # 915.473-010, light, unskilled; (2) agricultural produce sorter, DOT # 529.687-186, light, unskilled; and (3) ticket seller, DOT # 211.467-030, light, unskilled. (*Id.* at 42-43).[2] The ALJ concluded that Plaintiff was not under a disability from August 1, 2009, through the date of the decision. (*Id.* at 43).

D.      **Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

---

[2] "DOT" refers to the *Dictionary of Occupational Titles*.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II.  Analysis

On appeal, Plaintiff raises three issues. As stated by the parties, they are:

(1) Whether the ALJ erred in failing to give appropriate weight to the medical opinions of claimant's treating physician.

(2) Whether the ALJ erred in assigning significant weight to the opinions of Drs. Lionel Henry and Lo Kim Le.

(3) Whether the ALJ erred in basing his decision in part on Plaintiff's failure to utilize medications and treatment that she cannot afford.

(Doc. 23 at 18, 29, 32). The Court addresses each of these issues in turn.

### A.  Weight of Treating Physicians

Plaintiff argues that the ALJ erred in his assessment of Plaintiff's treating physician's opinion for three (3) reasons. (Doc. 23 at 20-22). First, Plaintiff claims that the ALJ erred in failing to state the weight he afforded Susana Segura, M.D.'s opinion concerning Plaintiff physical health. (*Id.* at 21). Second, the ALJ erred in failing to state the weight of Dr. Segura's Mental Capacity Assessment. (*Id.* at 22). Third, the ALJ erred in ignoring Dr. Segura's medical opinion as to Plaintiff's limitations in the ALJ's hypothetical to the vocational expert. (*Id.* 19).

The Commissioner responds that the ALJ properly considered and weighed Dr. Segura's opinions as to both Plaintiff's physical and mental health. (*Id.* at 23-28). The Commissioner also contends that the ALJ's hypothetical contained all the functional limitations that the ALJ found were supported by the record. (*Id.* at 29).

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's RFC determination at step four. *See Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* The Court addresses in turn the ALJ's consideration of Dr. Segura's opinion in the RFC Questionnaire, Dr. Segura's opinion in the Mental Capacity Assessment, and the ALJ's hypothetical to the vocational expert.

### 1. Dr. Segura's Residual Functional Capacity Questionnaire

Plaintiff contends that the ALJ "recites at great length the medical findings and opinions of Dr. Segura, but does not state the weight, if any, he assigned to them, nor offer any reason why they were not given great or controlling weight." (Doc. 23 at 21). Plaintiff then argues that the ALJ gave only one reason for rejecting Dr. Segura's medical opinion, specifically that the treatment notes from the day Dr. Segura completed the RFC Questionnaire do not support the opinions in this document. (*Id.*). Plaintiff claims that Dr. Segura's treatment notes do support her opinion and the ALJ erred in finding that these treatment notes do not. (*Id.*).

The Commissioner argues that even though the ALJ did not use the term "weight," he clearly gave little weight to Dr. Segura's opinion, gave good reasons for this determination, and these reasons are supported by substantial evidence. (*Id.* at 23-26).

In the decision, the ALJ meticulously summarized Dr. Segura's treatment notes. (Tr. at 29-33). Further, Plaintiff acknowledges that "the ALJ recites at great length the medical findings and opinions of Dr. Segura." (Doc. 23 at 21). The ALJ specifically summarized Plaintiff's July 2013 visit to Dr. Segura as follows:

> When the claimant returned in July 2013, her physical examination showed the claimant was obese. Her face exam was normal with tenderness to her sinuses. Eyes were normal and respiratory, cardiovascular and lymphatic exam was normal. Gait and station was appropriate for age. She had tenderness in both sacroiliac areas with normal range of motion and strength in her left and right lower extremities and no tenderness. She had no joint enlargement or tenderness. She had negative bilateral straight leg raise test. There was no obvious gross impairment of speech, cognition or motor control. She had no motor weakness, tremors, spasticity, fasciculation, wasting or hypertrophy. Reflexes [were] 2+, symmetric with no pathological reflexes. Judgment and insight was intact and she was oriented x3 (see Exhibit 7F, pages 8 and 9).

(Tr. at 40). The ALJ determined that Dr. Segura's July 2013 treatment notes are inconsistent with her residual functional capacity assessment provided in the Residual Functional Capacity

Questionnaire also completed by Dr. Segura in July 2013.  (*Id.* at 40, 443-44, 454-59).  The ALJ noted that in the RFC Questionnaire, Dr. Segura found Plaintiff not capable of working an eight-hour workday, yet the examination performed on the same day only showed tenderness to her sinuses and both sacroiliac areas with normal range of motion and strength in both her lower extremities with no tenderness.  (*Id.* at 40).

Plaintiff is correct that the ALJ erred in not stating the particular weight given to Dr. Segura's opinion in the RFC Questionnaire.  *See Winschel*, 631 F.3d at 1179.  Based on the record, however, the Court finds this error harmless.  *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983).  To reach this determination, the Court compares Dr. Segura's treatment notes from July 2013 with Dr. Segura's RFC Questionnaire.

On July 5, 2013, Dr. Segura treated Plaintiff.  (*Id.* at 454-59).  Plaintiff complained that her sugars ranged from a fasting sugar of 98 to 259.  (*Id.* at 454).  Plaintiff claimed that she had a headache with an intensity of 5 on a scale of 1-10.  (*Id.* at 456).  Plaintiff experienced sinus tenderness and sacroiliac tenderness.  (*Id.* at 457).  Otherwise Plaintiff's exam demonstrated normal findings for face, respiratory, cardiovascular, lymphatic, neurologic, and mental status.  (*Id.*).  Specifically, Dr. Segura found Plaintiff had appropriate gait and station for her age, normal range of motion and strength in her legs, negative bilateral straight leg raises, and no joint enlargement or tenderness.  (*Id.*).  Dr. Segura assessed Plaintiff with diabetes mellitus, type II, uncontrolled, hypertension benign as improved, acute frontal sinusitis, and depression.  (*Id.*).

To compare, in the RFC Questionnaire, Dr. Segura diagnosed Plaintiff with diabetes and found that her symptoms were fatigue, pain, and drowsiness.  (*Id.* at 443).  Dr. Segura found that Plaintiff:  would not need to lie down in excess of the normal breaks; could walk 1-2 city blocks; could sit and stand/walk for 10 minutes each at one time; could sit and stand/walk each for 1

hour in an 8-hour day; would need jobs allowing for change of positions; would need a break every 20 minutes with the break lasting 15 minutes; could lift 10 pounds frequently and 20 pounds occasionally; has limitations in repetitive reaching, handling or fingering; would be absent 3 or 4 times a month; was not a malingerer; and was not physically capable of working an 8-hour day, 5 days a week. (*Id.* at 443-44).

In comparing Dr. Segura's RFC Questionnaire with the records of Plaintiff's visit on the same date, the Court finds that the record supports the ALJ's determination that the treatment records are inconsistent with the extreme limitations in the RFC Questionnaire. Generally, Dr. Segura's treatment notes indicate that with the exception of a headache and some sinus and back tenderness, Plaintiff's examination findings were essentially normal. The Court does not find that Dr. Segura's treatment notes support a finding that Plaintiff: can only sit and stand/walk for 10 minutes at a time; can only sit and stand/walk for 1 hour in an 8-hour workday; needs a 15-minute break every 20 minutes; and is not physically capable of working an 8-hour day, 5 days a week.

Thus, based on the record, the Court finds that any error by the ALJ in not specifically stating the weight of Dr. Segura's opinion is harmless. The ALJ considered, but did not fully credit, Dr. Segura's opinion in the RFC Questionnaire. (*Id.* at 40). The ALJ reached this conclusion based upon his comparison of Dr. Segura's treatment record from the same date as the RFC Questionnaire. (*Id.*). The ALJ's discussion of Dr. Segura's treatment notes and opinion is in-depth and the Court is not left pondering why the ALJ made the decision he made. *See Colon v. Colvin*, 660 F. App'x 867, 870 (11th Cir. 2016). Accordingly, the Court finds that if the ALJ erred in failing to state the specific weight he afforded the Dr. Segura's opinion, this error

was harmless and the ALJ's decision as to Dr. Segura's opinion is supported by substantial evidence.

### 2. Dr. Segura's Mental Capacity Assessment

Plaintiff argues that the ALJ erred in not stating the weight he afforded Dr. Segura's Mental Capacity Assessment, but appeared to reject her opinion on the grounds that Dr. Segura is not a mental health provider and did not provide mental health treatment. (Doc. 23 at 22). Plaintiff also argues that Dr. Segura arranged for Plaintiff to be evaluated by mental health specialist, Eileen Calderon Psy.D. (*Id.*). Plaintiff claims that Dr. Calderon's opinion is consistent with Dr. Segura's Mental Capacity Assessment. (*Id.*).

The Commissioner argues that the ALJ properly rejected Dr. Segura's Mental Capacity Assessment because Dr. Segura's assessments appear to be based solely on Plaintiff's subjective complaints and other self-reporting. (*Id.* at 26). Further, the Commissioner claims that Dr. Segura did not explain "how her objective mental status findings support her opinion." (*Id.* at 27).

Plaintiff is again correct that the ALJ erred in not stating the particular weight given to Dr. Segura's opinion in the Mental Capacity Assessment. *See Winschel*, 631 F.3d at 1179. Based on the record, however, the Court finds this error harmless. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983). To reach this determination, the Court addresses the ALJ's decision, Dr. Segura's opinion, and Dr. Segura's treatment notes.

In the decision, the ALJ noted that Plaintiff's treating physician provided a Mental Capacity Assessment, wherein Dr. Segura diagnosed Plaintiff with depression. (Tr. at 40, 446-48). The ALJ noted that Dr. Segura is not a mental health provider, is not a counselor, and did

not provide mental health treatment to Plaintiff. (*Id.*). Further, the ALJ found that Dr. Segura's opinion was based solely on subjective complaints. (*Id.*).

In the Mental Capacity Assessment dated July 5, 2013, Dr. Segura found that Plaintiff had moderate ability: (1) to understand and remember very short simple instructions; (2) to interact appropriately with the general public; (3) to ask simple questions or request assistance; (4) to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (5) to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (Tr. at 446-48). Dr. Segura commented that Plaintiff has limited ability to manage benefits in her own best interest to due to current depression. (*Id.* at 448).

The ALJ discounted Dr. Segura's Mental Capacity Assessment for three (3) reasons. First, Dr. Segura is not a mental health provider. (*Id.* at 40). Second, Dr. Segura did not provide Plaintiff counseling or treatment. (*Id.*). Third, Dr. Segura's opinion is based solely on subjective complaints. (*Id.*). The Court addresses these reasons in order.

Both parties agree that Dr. Segura is not a mental health provider. (Doc. 23 at 18, 22, 26). Thus, the Court finds that the ALJ's first reason is uncontested.

Second, the ALJ found Dr. Segura did not provide mental health treatment or counseling. (Tr. at 40). As Plaintiff's treating physician, Dr. Segura examined – although somewhat minimally – Plaintiff's Mental Status during Plaintiff's visits. Repeatedly, Dr. Segura found Plaintiff's judgment and insight to be intact and to be oriented to time, place, and person. (*See e.g. id.* at 457, 462, 471). Dr. Segura did find Plaintiff depressed. (*Id.* at 478). Further, Dr. Segura prescribed medications for depression. (*See e.g. id.* at 458, 463, 472, 478). Thus, the Court finds that Dr. Segura provided some minimal treatment to Plaintiff.

11

However – as the ALJ noted in his third reason to discount Dr. Segura' opinion – Dr. Segura based this treatment on Plaintiff's subjective complaints and not on objective mental health testing. (*See e.g. id.* at 457, 462, 471, 478). Plaintiff does not point out any objective mental health testing conducted by Dr. Segura. Thus, the ALJ properly discounted Dr. Segura's Mental Capacity Assessment based upon the lack of objective testing by Dr. Segura. *See Crawford*, 363 F.3d at 1159 (finding that a treating physician's report may be discounted if it is not accompanied by objective medical evidence).[3]

The Courts finds that the ALJ erred in not assigning weight to Dr. Segura's Mental Capacity Assessment, but the error was harmless. *See Winschel*, 631 F.3d at 1179; *Diorio*, 721 F.2d 728. The Court finds that substantial evidence supports the ALJ's decision to discount Dr. Segura's Mental Capacity Assessment based upon Dr. Segura not being a mental health provider, not providing extensive treatment or counseling, and basing her opinion on solely subjective complaints without any objective testing.

### 3. ALJ's Hypothetical

Plaintiff argues the ALJ ignored Dr. Segura's medical opinion when formulating the hypotheticals to the vocational expert. (Doc. 23 at 20). The Commissioner argues that the ALJ is required to pose a hypothetical to the vocational expert that includes all limitations that are supported by the record. (*Id.* at 29).

---

[3] Plaintiff argues that Dr. Segura's Mental Capacity Assessment is consistent with Eileen Calderon, Psy.D.'s assessment dated February 24, 2015. (Doc. 23 at 22; Tr. at 446-48; Tr. at 692-96). Even if this is true, Dr. Segura completed the Mental Capacity Assessment in July 2013, whereas Dr. Calderon completed her assessment in February 2015. Thus, Dr. Segura did not rely on Dr. Calderon's treatment report. Further, the ALJ is entitled to discount Dr. Segura's Mental Capacity Assessment based on reasons that relate solely to Dr. Segura's opinion. Accordingly, the Court finds the ALJ did not err in his consideration of Dr. Segura's opinion.

An ALJ may use the Medical Vocational Guidelines or may obtain the testimony of a vocational expert to determine whether there are jobs that exist in the national economy that a claimant can perform. *Winschel*, 631 F.3d at 1180. If the ALJ decides to use a vocational expert, for the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id*. However, an ALJ is not required to include findings in the hypothetical that the ALJ found to be unsupported by the record. *Lee v. Comm'r of Soc. Sec.*, 448 F. App'x 952, 953 (11th Cir. 2011) (citing *Crawford*, 363 F.3d at 1161).

In this case, the ALJ posed hypotheticals to the vocational expert that did not include the limitations found by Dr. Segura. The Court determined, *supra*, that substantial evidence supports the ALJ's decision to discount Dr. Segura's RFC Questionnaire and Mental Capacity Assessment. Thus, the ALJ was not required to include Dr. Segura's limitations in the hypotheticals to the vocational expert.

According, the Court finds that the ALJ did not err in the hypotheticals posed to the vocational expert and substantial evidence supports the ALJ's decision as to this issue.

**B.     Weight of Non-Treating Physicians**

Plaintiff argues that substantial evidence does not support the ALJ giving "significant weight" to the opinions of state agency physicians, Lionel Henry, M.D. and Loc Kim Le, M.D., who are non-treating physicians and did not have the benefit of Dr. Segura's treatment notes prior to rendering their opinions. (Doc. 23 at 30).

The Commissioner responds that the ALJ did not give great weight to the opinions of Dr. Henry and Dr. Le, but only significant weight. (*Id.* at 31). Further, an ALJ is permitted to afford

significant weight to non-treating physicians if their opinions are consistent with the medical evidence of record.

Even though examining doctors' opinions are not entitled to deference, an ALJ is nonetheless required to consider every medical opinion. *Bennett v. Astrue*, No. 308-CV-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). "The ALJ is to consider a number of factors in determining how much weight to give to each medical opinion: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's 'opinion is with the record as a whole'; and (5) the doctor's specialization." *Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).

Plaintiff mainly argues that the ALJ erred in according significant weight to Dr. Henry's opinion because he reviewed Plaintiff's file on February 15, 2012, nearly four years prior to the hearing and he did not have the benefit of or review the medical evidence after that time. (Doc. 23 at 30). Similarly, Plaintiff argues that Dr. Le reviewed Plaintiff's file on January 21, 2014, more than two years prior to the hearing and he also did not have the benefit of or review all of the medical opinions after that time. (*Id.*).

In the decision, the ALJ afforded significant weight to Dr. Henry's and Dr. Le's opinions. (Tr. at 38). The ALJ acknowledged that both of these doctors were medical consultants for the Disability Determination Service and, although not treating physicians, they are medical doctors or trained consultants who reviewed Plaintiff's medical records prior to rendering their opinions. (*Id.*). The ALJ found that Dr. Henry's and Dr. Le's overall findings that Plaintiff could perform

work were supported by the objective evidence contained in the record. (*Id.*). More importantly, the ALJ recognized that Dr. Henry and Dr. Le "did not have the benefit of medical evidence presented at the hearing level or review of hearing testimony. The undersigned has provided a lowered overall exertional level to light duty, due to the impact of the claimant's morbid obesity and other musculoskeletal non-severe impairments." (*Id.*). Thus, the ALJ acknowledged that these doctors did not have the full medical records when they conducted their review and the ALJ took that into consideration when formulating Plaintiff's RFC.

The Court finds substantial evidence supports the ALJ's determination as to the weight afforded to Dr. Henry and Dr. Le.

### C. Ability to Afford Medication and Treatment

Plaintiff asserts that in the ALJ's decision, the ALJ made several references to Plaintiff not taking advantage of treatments or medications because she could not afford them. (Doc. 23 at 32). Plaintiff also asserts that the ALJ emphasized that Plaintiff has not sought or received mental health treatment and also the ALJ admonished Plaintiff that she must follow the treatment prescribed by her physicians. (*Id.*). Plaintiff argues that these findings suggest that the ALJ based his decision, at least in part, on the fact that Plaintiff "did not utilize some treatments and medications that were recommended because she could not afford them." (*Id.*). Plaintiff further contends that "[t]his is the only conceivable reason for the ALJ's finding that Ms. Adolph's depression does not even meet the low threshold for a 'severe' impairment, despite strong evidence of severity from Drs. Calderon, Segura and Kasprzak." (*Id.*). Plaintiff argues that poverty excuses noncompliance, and the ALJ erred in denying Plaintiff disability benefits based upon her inability to afford medications and treatments. (*Id.*).

The Commissioner argues that poverty is not an issue in this case and that substantial evidence supports that ALJ's decision. (*Id.* at 33-34).

The Eleventh Circuit has held that "refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability, but poverty excuses noncompliance." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (citation and quotation omitted). If a plaintiff fails to comply with prescribed treatment, then the ability to afford medication is a factor that should be considered in the administrative process. SSR 16-3p, 2016 WL 1119029, at *9 (Mar. 16, 2016). When an ALJ relies on noncompliance with prescribed medical treatment as the "sole ground for the denial of disability benefits," and the record contains evidence that a plaintiff was unable to afford the prescribed medical treatment, then the ALJ must determine whether a plaintiff could afford the prescribed medical treatment. *Ellison*, 355 F.3d at 1275. If a court determines that the failure to follow prescribed medical treatment is not one of the "principal factors in the ALJ's decision," then the ALJ is not required to delve into a plaintiff's ability to pay, and this failure is not reversible error. *Brown v. Comm'r of Soc. Sec.*, 425 F. App'x 813, 817 (11th Cir. 2011). If the failure to follow prescribed medical treatment is a substantial factor in an administrative law judge's decision to discredit a plaintiff's credibility, then the ALJ should inquire further as to whether a plaintiff was able to afford the prescribed medical treatment before holding noncompliance against a plaintiff. *Moffatt v. Comm'r of Soc. Sec.*, No. 8:13-CV-2853-T-36EAJ, 2015 WL 1038014, at *4 (M.D. Fla. Mar. 10, 2015).

Here, in the decision, the ALJ acknowledges that Plaintiff could not afford Maloxicam, tests regarding her enlarged heart, insulin, an inhaler, a stress test, and she has serious financial problems. (Tr. at 26, 32, 36). However, the ALJ did not find Plaintiff's noncompliance a substantial factor to discredit her. The ALJ focused on the medical records, including the

medical records that showed: Plaintiff's diabetes and hypertension were stable; Plaintiff had no fatigue; Plaintiff ambulated normally; Plaintiff had normal insight and judgment; Plaintiff was active and alert; and Plaintiff's overall examinations were unremarkable. (*Id.* at 40-41). The ALJ also focused on Plaintiff's daily activities that include: reading; taking care of her personal hygiene; preparing meals; washing dishes; cleaning; taking out the trash; sweeping; mopping; and vacuuming. (*Id.* at 41).

In this case, the Court finds that Plaintiff's non-compliance with medical treatment was not a substantial factor in the ALJ's decision to deny benefits. *See Moffatt*, 2015 WL 1038014, at *4. Accordingly, the ALJ's decision is supported by substantial evidence.

## III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that substantial evidence supports the ALJ's decision and the decision was decided upon proper legal standards.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on August 14, 2018.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties